TV COMMUNICATIONS NETWORK, INC., Plaintiff-Appellant,

v.

TURNER NETWORK TELEVISION, INC., a/k/a TNT, a Georgia corporation, Defendant-Appellee,

Entertainment and Sports Programming Network, Inc., a/k/a ESPN, Inc., a/k/a Entertainment Acquisition Ltd., a Delaware corporation; Capital Cities/ABC, Inc., d/b/a ABC Television Network, a/k/a ABC, a New York corporation; Tele-Communications, Inc., a/k/a TCI, a Delaware corporation; United Artists Entertainment Company, a/k/a UAE, a Delaware corporation; American Television and Communications Corp., a/k/a ATC, a Delaware corporation; Scripps Howard Cable Company, and Scripps Howard Communications ("SCRIPPS"), an Ohio corporation; Mile Hi Cable Company, d/b/a Mile Hi Cablevision, a/k/a Mile Hi, a Colorado corporation, Defendants.

No. 91-1176.

United States Court of Appeals, Tenth Circuit.

May 19, 1992.

Irvin M. Kent, Aurora, Colo. (Daniel L. Brotzman, Englewood, Colo., with him on the brief), for plaintiff-appellant.

Alan P. Shor of Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga. (John J. Dalton, P.C. and June Ann Sanders of Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., Miles C. Cortez, Jr., and Stephen J. Hensen of Cortez Friedman &

Coombe, Denver, Colo., with him on the brief), for defendant-appellee.

Before MOORE and BRORBY, Circuit Judges, and HUNTER,* Senior District Judge.

BRORBY, Circuit Judge.

TV Communications Network, Inc. (TVCN) appeals the district court's dismissal of its antitrust complaint for failure to state a claim upon which relief can be granted. 767 F.Supp. 1062. *See* Fed. R.Civ.P. 12(b)(6). TVCN further alleges the district court abused its discretion by denying TVCN leave to file a second amended complaint. We affirm.

## I. BACKGROUND

TVCN's amended complaint alleges the following facts which we assume are true for the purposes of our review. TVCN is in the business of providing cable television for a fee to subscribers in Metropolitan Denver. While most subscription television operators distribute programming through coaxial cable, TVCN is a wireless cable operator which utilizes new microwave transmission technology.

Turner Network Television (TNT), the only remaining defendant,[1] is in the business of manufacturing, producing and supplying video programming, especially National Premium Sports Programming. Turner Broadcasting Systems, Inc. (TBS) is the alter ego of TNT and is owned largely by other cable operators such as American Television and Communications Corp., Tele–Communications, Inc., United Artists Entertainment Co. and Scripps Howard Cable Company (former defendants).

Three distinct links create the chain of distribution for subscription television programming: programmers, operators and subscribers. Programmers are the manufacturers and wholesale distributors of

* The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The other original defendants ESPN, Capital Cities/ABC, Inc., Tele–Communications, Inc., United Artists Entertainment Co., American Television and Communications Corp., Scripps Howard Cable Company, Scripps Howard Communications, and Mile Hi Cable Co. settled out of court and are no longer parties to this appeal.

subscription programming who create their own shows or obtain rights to other events. Operators are the retailers at the local level who distribute shows from the programmers. Subscribers are the ultimate consumers who pay the operators a monthly fee to receive the programmers' events. TNT is a programmer, and TVCN is an operator.

Since 1988, TNT has refused to allow TVCN to receive its programming in order for TVCN to offer it to its subscribers. When surveying potential subscribers in Metropolitan Denver, TVCN discovered many would not subscribe until such a time that the TNT channel is available. Existing subscribers threatened to terminate their subscription if the TNT channel is not made available. Consequently, TVCN filed this lawsuit to force TNT to make its programming available to TVCN.

The district court dismissed TVCN's amended complaint for failure to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). The district court also denied TVCN's request for leave to file a second amended complaint finding "[a]ny further amendments would serve no useful purpose."

TVCN appeals and asserts the district court erred by dismissing its complaint for failure to state a claim where the amended complaint alleged sufficient facts to support an antitrust cause of action and provided adequate notice of those claims. TVCN also claims the district court abused its discretion by refusing leave to file a second amended complaint which would cure any alleged deficiencies in TVCN's first amended complaint.

## II. FAILURE TO STATE A CLAIM

Upon review of a dismissal under Rule 12(b)(6), we must assume the facts which TVCN has alleged in its amended complaint are true. *Associated Gen. Contractors, Inc. v. California State Council of Car-*

*penters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983); *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n,* 891 F.2d 1473, 1476 (10th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 498 (1990). We review de novo the sufficiency of a complaint, and will dismiss only if it appears the plaintiff can prove no set of facts which entitle him to relief on his claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' a claim must be dismissed." *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

■ Although the modern pleading requirements are quite liberal, a plaintiff must do more than cite relevant antitrust language to state a claim for relief. *See Mountain View Pharmacy v. Abbott Labs.,* 630 F.2d 1383, 1387 (10th Cir.1980). A plaintiff must allege sufficient facts to support a cause of action under the antitrust laws. Conclusory allegations that the defendant violated those laws are insufficient. *Id.* (citing *Klebanow v. New York Produce Exch.,* 344 F.2d 294, 299 (2d Cir. 1965)).

Our review of TVCN's amended complaint reveals the allegations contained therein fail to state any claim for relief against TNT. Accordingly, we affirm the district court's order dismissing the amended complaint against TNT.

### A. Section 2 of the Sherman Act

■ Section 2 of the Sherman Act prohibits monopolies in interstate trade or commerce.[2] Conduct violates this section

**2.** The relevant portion of section 2 of the Sherman Act provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopo-

lize any part of the trade or commerce among the several States ... shall be deemed guilty of a felony....

15 U.S.C. § 2 (1988).

where an entity acquires or maintains monopoly power in such a way as to preclude other entities from engaging in fair competition. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389–90, 76 S.Ct. 994, 1003–04, 100 L.Ed. 1264 (1956); *Instructional Sys. Dev. Corp. v. Aetna Cas. & Sur. Co.*, 817 F.2d 639, 649 (10th Cir.1987).

### 1. *Monopolization*

The two elements required to maintain a section 2 monopoly claim are: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 973 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). As discussed, TVCN must plead facts sufficient to support these elements to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

TVCN's amended complaint alleges TNT monopolized the market for the TNT channel in Metropolitan Denver. TVCN claims TNT has complete control of the TNT channel market with a 100% market share. Furthermore, TVCN alleges TNT has misused its monopoly power to gain competitive advantage and has restrained trade unreasonably. Finally, TVCN charges TNT has engaged in illegal territorial allocations, refusing access to essential facilities, and in anticompetitive, exclusionary, boycott, price-fixing and unfair acts. TVCN concludes TNT's actions are unreasonable and against their own individual interest.

■■■ TVCN fails to allege a relevant market which it is capable of monopolizing. TVCN's amended complaint specifically names the TNT channel as the relevant product market monopolized by TNT. However, a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product. *See*

*E.I. du Pont de Nemours*, 351 U.S. at 393, 76 S.Ct. at 1006; *Key Fin. Planning Corp. v. ITT Life Ins. Corp.*, 828 F.2d 635, 643 (10th Cir.1987). Consequently, TVCN has not alleged a relevant market which TNT is capable of monopolizing in violation of the antitrust laws.

Contrary to the allegations in its amended complaint, TVCN asserts on appeal that the market for the TNT channel is not the relevant market to consider. TVCN now alleges the relevant product market is subscription television programming or sports programming. This new definition of the relevant market is futile as it mischaracterizes the allegations in the amended complaint. The amended complaint must stand or fall on its own. We hold the relevant market as defined in the amended complaint is defective as a matter of law. Because we conclude TVCN failed to allege the first monopolization element—monopoly power in the relevant market, we need not consider the second element—TNT's unlawful acquisition or maintenance of monopoly power. We conclude TVCN has failed to state a monopolization claim against TNT. We therefore affirm the district court's dismissal of TVCN's monopolization claim against TNT pursuant to Fed. R.Civ.P. 12(b)(6).

### 2. *Attempt to Monopolize*

The four elements necessary to establish an attempt to monopolize claim are: "(1) relevant market (including geographic market and relevant product market); (2) dangerous probability of success in monopolizing the relevant market; (3) specific intent to monopolize; and (4) conduct in furtherance of such an attempt." *Colorado Interstate Gas Co. v. Natural Gas Pipeline*, 885 F.2d 683, 693 (10th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990). The key inquiry involves the power of the defendant in the market in which it competes. *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1376 (10th Cir.1979). Initially, therefore, the plaintiff must plead facts sufficient to establish the existence of a

relevant market and the defendant's power in that market. *Id.*

TVCN alleges TNT attempted to monopolize the market for the TNT channel. TVCN asserts TNT evidenced a "specific intent to control prices and destroy competition in the relevant market through predatory and anticompetitive conduct." The specific conduct alleged includes a "group boycott, price fixing, territorial allocations, access refusal to essential facilities, exclusionary measures and unfair practices" which have assured TNT a dangerous probability of success in obtaining a monopoly in the market for the TNT channel in Metropolitan Denver.

TVCN again defines the TNT channel in Metropolitan Denver as the relevant product market. However, as we discussed previously a claim cannot lie against TNT for the monopolization of its own product. *See Key,* 828 F.2d at 643. We conclude the relevant market as defined in TVCN's amended complaint is insufficient as a matter of law. Thus, TVCN can prove no set of facts which show TNT has a dangerous probability of success in monopolizing the defined relevant market. TNT cannot violate the Sherman Act by attempting to monopolize a market which it is incapable of monopolizing. We therefore affirm the district court's dismissal of TVCN's attempt to monopolize claim against TNT pursuant to Rule 12(b)(6).

### 3. *Conspiracy to Monopolize*

To establish a claim for conspiracy to monopolize in violation of section 2, a plaintiff must plead facts sufficient to support four elements: (1) "the existence of a combination or conspiracy to monopolize"; (2) "overt acts done in furtherance of the combination or conspiracy"; (3) "an effect upon an appreciable amount of interstate commerce"; and (4) "a specific intent to monopolize." *Olsen v. Progressive Music Supply, Inc.,* 703 F.2d 432, 438 (10th Cir.), *cert. denied,* 464 U.S. 866, 104 S.Ct. 197, 78 L.Ed.2d 172 (1983).

In its amended complaint, TVCN alleges TNT has combined or conspired with other defendants to monopolize the market for the TNT channel. TVCN asserts the overt acts and specific intent to monopolize are evidenced by access refusal to essential facilities for the relevant TNT channel market in Metropolitan Denver, fixing prices, a group boycott, unreasonable territorial allocations and exclusionary measures.

Additionally, TVCN alleges TNT admitted entering into exclusive agreements with cable operators to exclude TVCN from receiving the TNT channel until all the Metropolitan Denver operators agree to allow TVCN to receive the TNT channel. Thus, TVCN claims the cable operator owners of TBS and TNT have conspired to boycott TVCN to further the monopoly power of the cable operators.

■ "[A] bare bones [accusation] of conspiracy ... without any supporting facts" is insufficient to state an antitrust claim. *Mountain View Pharmacy,* 630 F.2d at 1388. In its amended complaint, TVCN alleges only that TNT conspired with other defendants. TVCN provides no facts in support of its claim that TNT conspired with the cable operators to further their monopoly power. While TVCN uses antitrust language in its complaint, such as price fixing, group boycott and exclusionary measures, it fails to elaborate on these allegations. The use of antitrust "buzz words" does not supply the factual circumstances necessary to support TVCN's conclusory allegations.

Although it is reasonable to infer that an entity would act to further its own monopoly power, it is implausible that the cable operator defendants would conspire with TNT to aid TNT in its efforts to acquire or to maintain a monopoly in the market for the TNT Channel. If, as TVCN alleges, the TNT Channel is "essential" to the cable operators, then achievement of the goal of the conspiracy would actually be contrary to the interests of the cable operators. In such a monopolistic environment, TNT would have the power and the incentive to charge the cable operators supercompetitive prices for the TNT service. Because the cable operators would have no rational motive to create such an environment, TVCN's allegations do not provide an infer-

ence of specific intent to conspire to achieve the stated goal of the conspiracy. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597, 106 S.Ct. 1348, 1361–62, 89 L.Ed.2d 538 (1986).

A complaint is subject to dismissal where it does "little more than recite the relevant anti-trust laws." *Mountain View Pharmacy*, 630 F.2d at 1387. We hold TVCN has failed to state a claim against TNT for conspiracy to monopolize. We therefore affirm the district court's dismissal of TVCN's conspiracy to monopolize claim against TNT for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

## B. Section 1 of the Sherman Act

Section 1 of the Sherman Act forbids contracts, combinations or conspiracies in restraint of trade.[3] To state a claim for a violation of section one the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market. *See Reazin*, 899 F.2d at 959. Under section one we determine the illegality of a contract, combination or conspiracy by examining whether: (1) it "constitute[s] a per se violation of the statute"; or (2) its "purpose or effect is to create an *unreasonable* restraint of trade." *Cayman*, 873 F.2d at 1359–60.

TVCN alleges TNT's conduct results in an unreasonable restraint of trade and unfair competition. In support of these allegations TVCN states TNT has engaged in group boycott, access refusals to essential facilities, exclusionary measures, territorial allocations and price discrimination.

■ The alleged conspiracy is between TNT and the cable operators. Because this agreement is between entities at different market levels the alleged restraint is a vertical restraint.[4] *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972). Vertical restraints are not illegal per se unless they include some agreement as to pricing levels. *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 735–36, 108 S.Ct. 1515, 1525–26, 99 L.Ed.2d 808 (1988). Although TVCN alleges TNT engaged in price fixing, it alleges no facts to support this conclusory assertion. TVCN's complaint does not disclose the existence of a pricing agreement. Accordingly, we conclude TVCN cannot establish a section one claim against TNT based on price fixing.

■ A group boycott is another per se violation of section one. *Key*, 828 F.2d at 640. However, a group boycott can only exist between conspirators who compete at the same market level. *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1224 n. 1 (10th Cir.1986), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1728, 100 L.Ed.2d 192 (1988). TNT is a programmer and thus competes at a different market level than the cable operators. TVCN has alleged that none of the cable operators at the same market level compete with each other. Consequently, no cause of action for group boycott exists based upon TVCN's amended complaint.

Next, we consider the factual circumstances alleged by TVCN to ascertain whether the agreement between the cable operators and TNT to refuse to deal with TVCN has the effect of suppressing competition in the subscription television market.[5] *See Reazin*, 899 F.2d 951.

■ Section one only prohibits refusals to deal where a manufacturer has monopo-

---

3. The relevant portion of section one provides: Every contract, combination ... or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal. 15 U.S.C. § 1 (1988).

4. TVCN attempts to establish horizontal competition between itself and TNT based on the fact four cable operators in Metropolitan Denver allegedly own more than 50% of TBS, the parent company of TNT. TVCN has not specified in which market this horizontal competition ex-

ists. Nor has TVCN provided any facts to support the existence of this alleged competition. We hold that TVCN's bare bones conclusion that horizontal competition exists between itself and TNT is insufficient as a matter of law.

5. As we have concluded in Part A. *supra*, no competition exists in the market for the TNT channel, therefore any agreement by TNT could have no negative or positive effect on competition in that market.

ly power in the market. *See Westman,* 796 F.2d at 1229. In this case, TNT is the "manufacturer" of the TNT channel. However, TNT does not have any market share of the subscription television market. In fact, TVCN's amended complaint shows that the cable operators have nearly 100% share of this market. Consequently, TNT's refusal to deal is not violative of the antitrust laws. Accordingly, we hold TVCN has failed to state a claim against TNT for a violation of section one of the Sherman Act. We affirm the district court's dismissal of TVCN's section one claim pursuant to Rule 12(b)(6).

### C. State Law Claims

■ TVCN asserts claims based upon allegations of various state law violations. The district court exercised pendent jurisdiction over the state law claims. Pendent jurisdiction is extended at the discretion of the court and is not a plaintiff's right. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* (footnote omitted).

As federal claims have all been dismissed no independent jurisdiction exists for the state law claims. We therefore affirm the trial court's dismissal of TVCN's state law claims without prejudice.

## III. SECOND AMENDED COMPLAINT

TVCN requested leave to file a second amended complaint. The district court denied TVCN's motion finding that any further amendments would be futile. Although Fed.R.Civ.P. 15(a) requires leave to amend be given freely, that requirement does not apply where an amendment obviously would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Mountain View Pharmacy,* 630 F.2d at 1389.

■ The district court has discretion when considering whether to allow a plaintiff to amend its complaint. *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1132 (10th Cir.1987). We will not overturn that decision absent an abuse of discretion. *Id.* A court abuses its discretion if it refuses leave without expressing any justification, however, if the denial rests on articulated reasons such as failure to cure deficiencies by previous amendments or futility of amendment the district court's's decision shall stand. *See Id.* " 'Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.' " *Mountain View Pharmacy,* 630 F.2d at 1389 (quoting *DeLoach v. Woodley,* 405 F.2d 496, 497 (5th Cir.1968)).

The district court already granted TVCN one opportunity to amend its complaint. When the district court denied TVCN's second motion to amend it found any further amendments would be futile. After dismissing TVCN's amended complaint for failure to state a claim pursuant to Rule 12(b)(6), the district court properly gave reasons for its refusal to grant leave to amend. Upon review of TVCN's complaint, we also conclude TVCN would be unable to cure the deficiencies therein. Moreover, TVCN has made no showing how it could cure the defects present in its current complaint. We hold the district court did not abuse its discretion by denying TVCN leave to file a third complaint.

## IV. CONCLUSION

We affirm the district court's dismissal of TVCN's complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). TVCN did not allege a relevant product market which TNT was capable of monopolizing, attempting to, or conspiring to monopolize in violation of section 2 of the Sherman Act. Furthermore, TVCN did not allege facts sufficient to support a violation of section one of the Sherman Act. As all TVCN's federal claims are dismissed, we also affirm the dismissal of TVCN's pendent state law claims. Finally, we affirm the district

court's refusal to grant TVCN leave to again amend its complaint.

AFFIRMED.