**DIAL A CAR, INC., Plaintiff,**

v.

**TRANSPORTATION, INC.**

and

**Barwood, Inc., Defendants.**

**Civ. A. No. 93–2170 (PLF).**

United States District Court,
District of Columbia.

April 27, 1995.

James Mason Loots, Washington, DC, for plaintiff.

Stephen Winston Grafman, Thomas A. Morris, Washington, DC, for Transp. Inc.

Gregg Howard Levy, David Lawrence Meyer, Washington, DC, for Barwood, Inc.

*OPINION*

FRIEDMAN, District Judge.

Dial A Car, Inc., has sued Transportation, Inc., which does business as Red Top Cab Co. of Arlington, and Barwood, Inc., which does business as Barwood Cab Co. of Maryland. Dial A Car alleges that the defendants have attempted illegally to monopolize the relevant market and have engaged in a conspiracy in restraint of trade, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, and the D.C. Unfair Trade Practices Act, D.C.Code § 28–4508. It also alleges that defendants have engaged in unfair competition through the use of false and misleading statements and representations in advertising and to customers, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125. Finally, it alleges tortious interference with contract and tortious interference with prospective business relations. Barwood has counterclaimed, alleging defamation and tortious interference with prospective business relations. The case is before the Court on Transportation, Inc.'s motion to dismiss the complaint, Barwood, Inc.'s motion for judgment on the pleadings and Dial A Car's motion to dismiss Barwood, Inc.'s counterclaims.

## I. FACTS

Dial A Car is licensed in the District of Columbia to provide passenger transport services for hire in and around the greater Washington Metropolitan Area. Complaint at ¶ 5. Dial A Car's primary business is to offer corporations, law firms and other businesses in the District of Columbia Corporate Account Transportation Services. *Id.* at ¶¶ 21, 43. Through this service, Dial A Car provides pre-arranged, or "on-call," point-to-point transportation to employees and clients of Corporate Account Customers. *Id.* at ¶ 10. It does not serve the general public. *Id.* at ¶ 13. The service is charged on a contractual rather than on a tariff basis, with central billing and accounting through vouchers for the appropriate fares that are then charged to established Corporate Accounts. *Id.* at ¶¶ 10, 13. In providing this service, Dial A Car uses luxury sedans or limousines,

sometimes called Blue Cars, which it asserts are more expensive to operate than regular taxicabs. *Id.* at ¶ 12. While some of Dial A Car's competitors provide both regular taxicab service and Corporate Account Transportation Services, Dial A Car provides only the latter. *Id.* at ¶ 21.

By contrast, those providing regular taxicab service accept or solicit passengers for transport on the streets on an ad hoc basis and charge them on a tariff basis. Complaint at ¶¶ 13, 14. Regular taxicabs in the District of Columbia are regulated by the District of Columbia Taxicab Commission which has the authority to determine the extent to which regular taxicabs from other jurisdictions may lawfully operate in the District of Columbia. *Id.* at ¶ 15. Regular taxicabs from elsewhere are licensed in their county of origin and are regulated by their county of licensure. *Id.* at ¶ 14. According to Dial A Car, regular taxicabs may lawfully service Corporate Accounts, but only to the extent that such regular taxicabs are licensed to make the specific journey for which they are dispatched. *Id.* at ¶ 20.

Transportation, Inc., doing business as Red Top, is licensed to provide regular taxicab service in Arlington County, Virginia, but is not licensed in the District of Columbia. Complaint at ¶¶ 6, 16, 17. Barwood, Inc. is licensed to provide regular taxicab service in Montgomery County, Maryland, but is not licensed in the District of Columbia. *Id.* at ¶¶ 7, 16, 18. Red Top and Barwood each provide regular taxicab service in their respective jurisdictions and provide Corporate Account Transportation Services in the greater Washington Metropolitan Area. *Id.* at ¶¶ 6, 7. Dial A Car asserts that neither Red Top nor Barwood is licensed by the District of Columbia Taxicab Commission to provide either taxicab service generally or on-call point-to-point transportation services in the District of Columbia. *Id.* at ¶ 16.

The District of Columbia Taxicab Commission has set out in D.C. Taxicab Commission Office Administrative Order No. 4 the conditions under which taxicab operators not licensed in the District of Columbia may deliver and pick up passengers in the District of Columbia. Complaint at ¶¶ 25, 32. Dial A Car alleges that Office Administrative Order No. 4 strictly limits the services Red Top and Barwood may provide in the District of Columbia. It asserts that the Order allows Red Top and Barwood to drop off passengers in the District of Columbia only if they were picked up in the county of licensure, Arlington or Montgomery County, respectively, and to pick up passengers in the District of Columbia only if the passengers have a direct destination of Arlington or Montgomery County, respectively. Plaintiff maintains that Office Administrative Order No. 4 does not authorize Red Top or Barwood to come into the District of Columbia to pick up passengers and deliver them either to destinations within the District of Columbia or to any other destination not located within their respective county of licensure. *Id.* at ¶¶ 25–27, 32–34.[1]

Dial A Car alleges that Red Top and Barwood are violating Office Administrative Order No. 4 by coming into the District of Columbia to pick up Corporate Account passengers in regular taxicabs at locations other than their counties of licensure and delivering them to destinations in the District of Columbia or to locations other than their counties of licensure. Complaint at ¶¶ 26, 27, 33, 34. It claims that defendants also violate

---

1. Paragraph 25 of the complaint alleges:

   Defendant Red Top, pursuant to the District of Columbia Taxicab Commission's Office Administrative Order No. 4, is not licensed to pick up any passenger in the District of Columbia except under the following conditions: a) in response to a radio call to a "Virginia dispatcher, transmitted to the Virginia cab—to pick up in the District of Columbia with a direct destination in [Arlington County];" or b) in "response to a prearranged trip for a party to go from the District of Columbia to a direct destination in [Arlington County];" or c) in the event that "[i]mmediately following the termination of a trip into the District of Columbia from Virginia, the Virginia taxicab may pickup [sic] a passenger bound for the Virginia county of licensure [Arlington County] provided the pick-up is at the exact location that the original Virginia passenger was discharged." D.C. Taxicab Commission Office Administrative Order No. 4 (August 13, 1987) at 1–2.

   Paragraph 32 is identical to paragraph 25, except that the allegations in that paragraph relate to Barwood and reference Maryland and Montgomery County.

Office Administrative Order No. 4 when their taxicabs fail to return directly to their county of licensure after delivering passengers in the District and instead "loiter" in the District "to secure additional illegal passenger journeys from Corporate Accounts." *Id.* at ¶¶ 28, 35. Dial A Car maintains that Red Top and Barwood have no lawful authority to operate their regular taxicabs in this market, that their conduct is in violation of D.C. regulations and the regulations of defendants' counties of licensure, that by illegally using regular taxicabs defendants provide Corporate Account Services at lower prices than Dial A Car can, and that Dial A Car has lost and is losing Corporate Account business because of defendants' illegal conduct. *Id.* at ¶¶ 29, 36, 46. Dial A Car claims that defendants' conduct constitutes an attempted monopolization of the Corporate Account Transportation Service business in the District of Columbia and a conspiracy to restrain trade, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, and the D.C. Unfair Trade Practices Act, D.C.Code § 28–4508.

## II. DISCUSSION

### A. *Plaintiff Has Failed To Allege Federal Antitrust Claims For Which Relief Can Be Granted*

■ On a motion to dismiss or for judgment on the pleadings, the Court must assume the truth of the facts alleged in the complaint and may grant the motion only if it appears that plaintiff will be unable to prove any set of facts that would justify relief under the complaint. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325, 111 S.Ct. 1842, 1845, 114 L.Ed.2d 366 (1991); *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987). To survive such a motion in an antitrust case, however, a plaintiff must do more than simply paraphrase the language of the federal antitrust laws or state in conclusory terms that a defendant has violated those laws. "[I]f he claims an antitrust violation, but the facts he narrates do not at least outline or

adumbrate such a violation, he will get nowhere merely by dressing them up in the language of antitrust." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984). *See TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 601, 121 L.Ed.2d 537 (1992). "Bare legal conclusion[s]" will not suffice. *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d at 654. Applying these principles, the Court concludes that the complaint fails to state a claim for which relief can be granted for either attempted monopolization or conspiracy to restrain trade under the Sherman Antitrust Act.[2]

### 1. Plaintiff Has Failed To Allege Antitrust Injury

■ Dial A Car's antitrust claims can be summarized as follows: Dial A Car has lost certain Corporate Account Customers, or substantial portions of such Accounts, to Red Top and Barwood because Red Top and Barwood provide Corporate Account Services at lower prices by using regular taxicabs to service Corporate Accounts in violation of relevant taxicab regulations. Complaint at ¶ 46. Not being in the regular taxicab business, Dial A Car does not have the option of using regular taxicabs to service the Corporate Account market and must use more expensive Blue Cars to provide Corporate Account Services. *Id.* at ¶¶ 12, 21. Defendants' use of regular taxicabs to provide Corporate Account Services violates District of Columbia Taxicab Office Administrative Order No. 4. *Id.* at ¶¶ 25–29, 32–36. This conduct by defendants is an attempt to monopolize and divide Corporate Account Service business in the greater Washington Metropolitan Area. *Id.* at ¶ 39.

■ As the Supreme Court has made plain, a plaintiff claiming federal antitrust violations must plead and prove "more than injury causally linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97

---

**2.** If the complaint fails to state a claim under the Sherman Antitrust Act, it also fails to state a claim under the District of Columbia Unfair Trade Practices Act, D.C.Code § 28–4508. *See Mazanderan v. Independent Taxi Owners' Ass'n, Inc.,* 700 F.Supp. 588, 591 & n. 9 (D.D.C.1988).

S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Because the antitrust laws "were enacted for 'the protection of *competition,* not *competitors,*'" it must also show an anticompetitive impact on the market. *Id.* at 488, 97 S.Ct. at 697 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)). An antitrust plaintiff therefore must plead and prove *"antitrust injury,* which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 489, 97 S.Ct. at 697. The injury claimed must "reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* The antitrust laws were not intended to prevent losses that result from increased competition but those resulting from activity that may tend to lessen competition. *See, e.g., Brown Shoe Co. v. United States,* 370 U.S. at 320, 82 S.Ct. at 1521. The reason an antitrust plaintiff is required to plead antitrust injury is to assure that a plaintiff can recover "only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 344, 110 S.Ct. 1884, 1894, 109 L.Ed.2d 333 (1990) (emphasis in original).

The facts alleged by Dial A Car do not meet the *Brunswick* test. They fail to show injury to competition, as opposed to injury to a single competitor, or that the conduct complained of has reduced competition rather than increased it. The injury to Dial A Car, if any, has resulted from defendants' alleged violation of District of Columbia taxicab regulations, which violation in turn has permitted Red Top and Barwood to provide the market with a less expensive service than that provided by Dial A Car. The mere fact that the conduct of Red Top and Barwood may have had an adverse impact on Dial A Car, one of defendants' competitors, however, is not enough to show antitrust injury. *See Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1334 (7th Cir.1986); *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d at 655. While the unfair competition of which Dial A Car complains may have resulted in the loss of business and revenue, it does not constitute a violation of the antitrust laws. Despite the "[l]iberal use of the language of antitrust[,] ... when stripped to its essential[s]," Dial A Car's complaint does no more than state various ordinary business torts and violations of local taxicab regulations and reflect plaintiff's "commercial disappointment." *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F.Supp. 677, 684 (D.D.C.1984) (citations and internal quotation marks omitted). "The gist of [its] complaint is that [Dial A Car]—not the market—has been wronged." *Id.*

Dial A Car has pled no facts that show that defendants' conduct is anticompetitive, that it has reduced or is reducing competition, has restrained or is restraining trade, or has forced or is forcing competitors out of the market. Indeed, it has alleged no impact on competition at all. At most, Dial A Car has shown that defendants' entry into the market has increased, not reduced, competition, and that the increased competition has had an adverse impact on one competitor, Dial A Car. Dial A Car has not stated an antitrust claim because the allegations in its complaint "so clearly indicate that defendants have *increased* competition, albeit to the detriment of a competitor." *Budget Rent A Car of Westchester, Inc. v. Rental Car Resources, Inc.,* 842 F.Supp. 614, 616 (D.Conn.1993) (emphasis in original). "[A]bsent injury to *competition,* injury to plaintiff as a *competitor* will not satisfy th[e] pleading requirement." *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F.Supp. at 683 (citations omitted). Without any "factually supported allegations of anticompetitive effect," plaintiff's antitrust claims must be dismissed. *Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America,* 635 F.Supp. 534, 537 (D.D.C.1986).

### 2. Plaintiff Has Failed To Allege Facts Sufficient To Claim Attempted Monopolization

■ In addition to failing to allege antitrust injury, Dial A Car has not alleged in more than conclusory terms (1) a specific intent to destroy competition or control competition in the relevant market, and (2) a dangerous probability of success in actually monopolizing the relevant market, both es-

sential elements for an attempted monopolization claim. *Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America,* 635 F.Supp. at 538 (citations omitted); *see Spectrum Sports, Inc. v. McQuillan,* —— U.S. ——, —————, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993); *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1025; *Association for Intercollegiate Athletics for Women v. N.C.A.A.,* 735 F.2d 577, 585 (D.C.Cir.1984). Generally this requires "a definition of the relevant market and examination of market power." *Spectrum Sports, Inc. v. McQuillan,* —— U.S. at ——, 113 S.Ct. at 890. "The key inquiry involves the power of the defendant in the market in which it competes. Initially, therefore, the plaintiff must plead facts sufficient to establish the existence of a relevant market and the defendant's power in that market." *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1025–26 (citation and emphasis omitted). Because Dial A Car has failed to plead such facts, it cannot survive defendants' motions.

Dial A Car alleges, on information and belief, that defendants are illegally providing "Relevant Market services by Regular Taxicabs at a lower price than Plaintiff can provide such services by Blue Car, with the specific intent to preclude Plaintiff from effectively competing in the Relevant Market." Complaint at ¶ 39.b. Plaintiff further alleges, on information and belief, that once defendants have eliminated it from the relevant market, defendants "intend to replace their illegal low-priced Relevant Market service by Regular Taxicab with their own, lawful, higher-priced Blue Car Relevant Market services, without fear of competition." *Id.* at ¶ 39.c. Finally, plaintiff alleges, on information and belief, that since at least 1990 defendants have "illegally divided the Relevant Market services," including those taken from Dial A Car. *Id.* at ¶ 42. That is the sum and substance of Dial A Car's Section 2 claim.

Although plaintiff uses the right antitrust buzzwords and its complaint "is replete with the vocabulary of antitrust law," *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F.Supp. at 683, it alleges the

elements of the offense of attempted monopolization in only the most conclusory fashion. It has pled no facts to show what the relevant market is and sets forth no facts from which the Court reasonably could infer that the defendants have the specific intent to eliminate Dial A Car or other competitors from the market so they can later take it over at higher rates. *Id.* at 684. Rather, it states defendants' intent to prevent competition in the most conclusory terms and predicts that defendants' conduct eventually will eliminate Dial A Car from the market, permitting defendants then to increase prices. To leap from the fact that Red Top and Barwood are violating Administrative Order No. 4 and therefore are able to charge lower prices than Dial A Car to such speculative conclusions about consequences and intent is an insufficient basis on which to rest an attempted monopolization claim. *See TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d at 1024; *Budget Rent A Car of Westchester, Inc. v. Rental Car Resources, Inc.,* 842 F.Supp. at 616.

■ Nor has Dial A Car adequately pled a dangerous probability that defendants will succeed in monopolizing the relevant market. A dangerous probability of success can be shown "where the defendant possesses a significant market share when it undertakes the challenged anticompetitive conduct," *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1017 (2d Cir.1989), or where the defendant has the "power to control price and exclude *competition generally* in the relevant market." *Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F.Supp. at 684 (citations omitted) (emphasis in original). Because there are no facts that "even hint[ ] at an actual, imminent or intended concentration of *market* power" in the defendants, the Court concludes that Dial A Car's allegations fail to state a claim under Section 2 of the Sherman Antitrust Act. *Id.* (emphasis in original). *See Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America,* 635 F.Supp. at 538.

Plaintiff has failed to allege any facts showing that the defendants have the kind of

actual or probable market power necessary to exclude competition generally from the market or to force Dial A Car out of the market. Dial A Car has failed even to allege any facts demonstrating that the market is capable of being monopolized, what market share of the Corporate Account Service business defendants possess, or any facts concerning defendants' market positions relative to other market participants. *See Deem v. Lockheed Corp.*, 749 F.Supp. 1230, 1236–37 (S.D.N.Y.1989). The omission of such facts "is fatal." *Mizlou Television Network, Inc. v. National Broadcasting Co.*, 603 F.Supp. at 684. "Even a claim of attempt to monopolize requires a plaintiff to plead facts alleging a dangerous probability that, if unchecked, the defendant's conduct will ripen into monopolization." *Id.* (citations omitted). In the absence of any such facts, plaintiff's complaint must be dismissed.

### 3. Plaintiff Has Failed To Allege Facts Sufficient To Claim Conspiracy In Restraint of Trade

■ To state a proper claim for conspiracy in restraint of trade, in violation of Sections 1 and 3 of the Sherman Antitrust Act, a plaintiff must allege that defendants entered into some contract, combination, conspiracy or other concerted activity that unreasonably restricts trade in the relevant market. *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d at 1027; *Association of Retail Travel Agents, Ltd. v. Air Transport Ass'n of America*, 635 F.Supp. at 536. The sufficiency of an allegation of "an *unreasonable* restraint on competition ... turns on the consequences of [defendants'] conduct in the relevant market." *Mizlou Television Network, Inc. v. National Broadcasting Co.*, 603 F.Supp. at 683 (emphasis in original).

■ Dial A Car has alleged on information and belief an agreement, combination and conspiracy between Red Top and Barwood to divide the relevant market among themselves, to illegally provide relevant market services by regular taxicabs at lower prices than those at which plaintiff can provide such services with the specific intent to preclude plaintiff from effectively competing, and to replace the illegal, low-priced services

defendants now provide with lawful, higher-priced services once they have succeeded in driving plaintiff from the market. Complaint at ¶ 39. But plaintiff has failed to identify any other competitors in the relevant market, any specific impact on competitors other than itself, or any facts from which the Court reasonably could infer that the predicted elimination of plaintiff from the market (dubious speculation in itself) would result in injury to competition in general. *See Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d at 655; *Deem v. Lockheed Corp.*, 749 F.Supp. at 1236; *Mizlou Television Network, Inc. v. National Broadcasting Co.*, 603 F.Supp. at 683.

Plaintiff has not alleged any facts from which the Court may infer concerted activity or coordinated conduct, let alone any competition-restraining conduct or unreasonable restraints of trade. Defendants' conduct may have resulted in *lower* prices and *more* competition in the market; it has not resulted in *higher* prices and *less* competition. "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to antitrust injury" or to a claim for restraint of trade. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. at 340, 110 S.Ct. at 1892. Accordingly, Dial A Car's claims under Sections 1 and 3 of the Sherman Antitrust Act must be dismissed.

### B. Plaintiff Has Failed To State A Lanham Act Claim For Which Relief May Be Granted

■ Dial A Car also claims that Red Top and Barwood have violated the Lanham Act by falsely representing to customers their legal authority to provide Corporate Account Transportation Services with regular taxicabs. Complaint at ¶¶ 30, 37, 48, 64. Specifically, Dial A Car alleges that defendants falsely represented in discussions with Corporate Account customers and passengers and in written advertising and promotional materials, such as legends on taxicabs and directory advertising, that their regular taxicabs could lawfully be used to provide the same Corporate Account Services as Dial A

Car provides. *Id.* at ¶¶ 30, 31, 37, 38, 44. Plaintiff maintains that by virtue of Office Administrative Order No. 4 and the decision in *Lim v. District of Columbia Taxicab Comm'n,* 564 A.2d 720 (D.C.1989), defendants could not legally provide such services.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(2), provides in pertinent part:

Any person who, on, or in connection with any goods or services ... uses ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To survive a motion to dismiss or for judgment on the pleadings on a Lanham Act claim, a plaintiff must allege that defendants made statements of fact in their commercial advertising or promotion that were (1) false or misleading, (2) actually or likely deceptive, (3) material in their effects on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to the plaintiff. *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 964 (D.C.Cir.1990); *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 117 (E.D.N.Y.1993). A Lanham Act plaintiff must allege and prove that an alleged false or misleading representation of fact was "literally false or misleading to the public" or "verifiably" false or misleading. *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 229, 231 (3d Cir.1990).

Red Top and Barwood argue that plaintiff's complaint fails to allege that defendants made any misrepresentation of material *fact* that plaintiff can prove was verifiably false. They maintain that their statements were opinions regarding the legality of their services. They also contend that any determination of the accuracy of their representations requires that the Taxicab Commission interpret the District of Columbia's taxicab regulations as they relate to this issue, an interpretation that has not yet been made. Specifically, they maintain that the Commission has not determined whether Office Administrative Order No. 4 applies to taxicabs providing Corporate Account Services. The Court agrees.

The D.C. Taxicab Commission, which has authority to determine whether the provision of Corporate Account Services by Maryland- and Virginia-licensed taxicab companies is lawful, has not addressed in an adjudication or any other formal ruling whether the defendants' provision of said services with regular taxicabs in the District of Columbia violates the terms of Office Administrative Order No. 4. Although the court in *Lim* dealt with a taxicab reciprocity agreement entered into between Washington, D.C., and Virginia that is similar to Office Administrative Order No. 4, the court in that case did not address the legality of using regular taxicabs to provide Corporate Account Services. *See Lim v. District of Columbia Taxicab Comm'n,* 564 A.2d at 721, 723. Finally, it is not even clear on the face of Office Administrative Order No. 4 that it applies to transportation services of the kind Red Top and Barwood are alleged to have provided in the District of Columbia.

In light of this uncertainty, the Court cannot say that defendants' statements that their services are legal were verifiably false representations of fact. Despite Dial A Car's arguments that the defendants' provision of Corporate Account Services was illegal, the truth or falsity of defendants' representations cannot be verified until the appropriate authority addresses the applicability of Administrative Order No. 4 to defendants' conduct. In the meantime, "to say that [defendants' conduct] is or is not illegal is simply not yet true." *Universal City Studios, Inc. v. Sony Corp. of America,* 429 F.Supp. 407, 410 (C.D.Cal.1977). At this point, all that can be said is that defendants were expressing an opinion on an inconclusive question of law and were not making representations of verifiable or "hard definable facts." *Licata & Co. Inc. v. Goldberg,* 812 F.Supp. 403, 408 (S.D.N.Y.1993).

■ The only way for the Court to determine whether the provision by defendants of Corporate Account Services is illegal is by interpreting regulations that are within the Taxicab Commission's bailiwick. *See* D.C.Code §§ 40–1704, 40–1707, 40–1719; *Lim v. District of Columbia Taxicab Comm'n*, 564 A.2d at 722. It is generally inappropriate for a court in a Lanham Act case "to determine preemptively how [an administrative agency] will interpret and enforce its own regulations" and thereby to usurp the agency's responsibility for interpreting and enforcing potentially ambiguous regulations. *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d at 231. It is particularly inappropriate to extend federal jurisdiction through the Lanham Act to reach disputes over the meaning of local regulations. It is the Taxicab Commission's prerogative in the first instance to interpret Office Administrative Order No. 4 and to determine whether providing Corporate Account Services with regular taxicabs is contrary to D.C. taxicab regulations.

The complaint fails to support the first element of a Lanham Act false advertising claim—that the promotion was a false or misleading statement of verifiable fact. *See ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d at 964. Dial A Car's Lanham Act claim therefore will be dismissed.

*C. Plaintiff's State Law Claims And Defendant Barwood's State Law Counterclaims Are Dismissed Pursuant to 28 U.S.C. § 1367(c)(3)*

Because plaintiff's federal claims, over which the Court has original jurisdiction, must be dismissed, the Court declines to exercise supplemental jurisdiction over plaintiff's additional state law claims and defendant Barwood's state law counterclaims. 28 U.S.C. § 1367(c)(3). The principles and interests underlying the doctrine of supplemental jurisdiction would not be served by doing so. *See Fair Employ. Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1276 (D.C.Cir.1994); *Capital Imaging Associates, Inc. v. Mohawk Valley Medical Associates, Inc.*, 791 F.Supp. 956, 968 (N.D.N.Y.), *aff'd*, 996 F.2d 537 (2d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993)); *Mizlou Television Network, Inc. v. National Broadcasting Co.*, 603 F.Supp. at 685. The state law claims and counterclaims therefore also will be dismissed, but without prejudice.

### III. CONCLUSION

For the foregoing reasons, defendant Barwood Inc.'s motion for judgment on the pleadings and defendant Transportation Inc.'s motion to dismiss are GRANTED. In addition, plaintiff's motion to dismiss defendant Barwood's counterclaims is GRANTED. An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### *ORDER*

This case is before the Court on defendant Transportation, Inc.'s motion to dismiss the complaint, defendant Barwood, Inc.'s motion for judgment on the pleadings and plaintiff Dial A Car's motion to dismiss Barwood, Inc.'s counterclaims. Upon consideration of the motions, the supporting and opposing papers, the record in this case, and the arguments of counsel in open court, and for the reasons stated in the Court's accompanying Opinion, the Court finds that plaintiff has failed to state any federal claim for which relief may be granted. The Court declines to exercise supplemental jurisdiction over plaintiff's additional state law claims and defendant Barwood's state law counterclaims. 28 U.S.C. § 1367(c)(3). Accordingly, it is hereby

ORDERED that defendant Barwood Inc.'s motion for judgment on the pleadings is GRANTED; it is

FURTHER ORDERED that defendant Transportation Inc.'s motion to dismiss is GRANTED; it is

FURTHER ORDERED that plaintiff's motion to dismiss defendant Barwood, Inc.'s counterclaims is GRANTED; it is

FURTHER ORDERED that plaintiff's federal antitrust and Lanham Act claims are dismissed with prejudice; it is

FURTHER ORDERED that plaintiff's supplemental state law claims are dismissed without prejudice; and it is

FURTHER ORDERED that defendant Barwood, Inc.'s counterclaims are dismissed without prejudice.

SO ORDERED.